IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

FILED
U.S. CLERKS OFFICE

2004 JUN 10  A 11: 53

U.S. DISTRICT COURT
DISTRICT OF MASS.

# 04-40111

| | |
|---|---|
| ROBERT KRILICH, SR., | I |
| Petitioner, | I |
| | I |
| v. | I |
| | I |
| D. WINN, Warden, | I |
| Respondent | I |

Civil Case No._____

oo00I00oo

PETITION FOR WRIT OF HABEAS CORPUS 28 U,S.C. § 2241

COMES NOW the Petitioner Robert Krilich, Sr., Pro Se, in
seeking a Writ of Habeas Corpus to issue pursuant to 28 U.S.C.
§ 2241 based upon his assertion that he is being held in violation
of the laws and Constitution of the United States based upon the
following facts and points of law:

FILING FEE PAID:
RECEIPT # 404345
AMOUNT $ 5.00
BY DPTY CLK S. Jones
DATE 6-14-04

## I.    JURISDICTION & VENUE

The jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. § 2241, the Writ of Habeas Corpus. Jurisdiction is proper in that this Honorable Court is the Court that has jurisdiction over the Custodian of this Petitioner who is D. Winn, Warden of the Institution at Federal Medical Center Devens, Ayer, Massachusetts where Petitioner is currenttly incarcerated.

## II.    FACTS OF THE CASE

### A.    THE FIRST SENTENCING OF PETITIONER

Petitioner was initially Sentenced in the United States
District Court for the Northern District of Illinois on June 23,
1997 before the Honorable Judge John P. Grady for his violation
of 18 U.S.C. § 1962(d), "Racketeering Conspiracy", and 18 U.S.C.
§ 1014, "False Statements to a Bank", after a trial by Jury.
Petitioner was Sentenced to sixty-four (64) months imprisonment.
See Exhibit No. 1, "Judgment in a Criminal Case".

At Sentencing the district court found that under U.S.S.G.
§ 2F1.1, the "loss" as a result of the offenses was between
$5 million and $10 million which corresponded to an increase in
the Offense Level under the Guidelines of 14 Levels. The court
then departed downward 7 Offense Levels upon two basis:
(1) That pursuant to U.S.S.G. § 2F1.1 Application Note 7(b),
the Guidelines overstated the seriousness of Petitioner's offense;
and (2) The Sentence Disparity between this Petitioner's
presumptive Sentence of sixty-four (64) months and a co-defendant's
Sentnece of only six (6) months based upon the latter's cooperation
and the prosecutor refraining from charging the most serious offense
in exchange for a guilty plea.

### B.    THE FIRST APPEAL AND THE COURT OF APPEALS REMAND

Petitioner appealed his Sentence and the Government appealed
the Downward Departures given by the district court. The decision

3.

of the court of appeals in published at **U.S. v. Krilich,**
**159 f.3d 1020 (7th Cir. 1998).** In that decision the court of appeals
held that as to the Downward Departure allowed by Application
Note 7(b) to § 2F1.1 ought be allowed based upon a prior case in
which the subject arose at least in principle:

> "Many guidelines incorporate the table in
> § 2F1.1, and this is not the first time we
> have had to decide whether judges may refer to
> the application notes that explain (or limit)
> the operation of that table. But the last time
> the subject came up, the parties' positions
> were reversed: the defendant argued that
> § 2F1.1's table should be applied without
> reference to its application notes, and the
> United States contended that reference to the
> notes was necessary, indeed obligatory. We
> held that the table is far from self-explanatory
> and that reference to its application notes
> is essential to its accurate application.
> **United States v. Kim Tae Sung,** 51 F.3d 92,94-95,
> (7th Cir. 1995). What's sauce for the goose
> is sauce for the gander. The district judge
> was entitled to accept the invitation extended
> by Application Note 7(b). See **Koon v. United**
> **States,** 518 U.S. 81, 94-96, 116 S.Ct. 2035,
> 135 L.Ed.2d 392 (1996).
>
> Any departure, even one based on factors
> identified by the Sentencing Commission as
> appropriate, must be carefully considered,
> and explained. We have considerable doubt
> that the district court's departure satisfies
> this requirement. Application Note 7(b)
> authorizes a downward departure if the table
> overstates the seriousness of the defendant's

4.

> conduct. But the district judge did not
> directly address this issue; instead the
> judge believed that the Sentencing Commission
> should have made the sentence depend on the
> loss to third parties rather than the gain
> to the perpetrator, and it was the lack of
> a "loss" table that led him to cut in half
> the number of levels produced by the "gain"
> table. According to the judge, Krilich's
> scheme produced a profit for him withoutany
> offsetting loss to anyone else, which
> justified a reduced sentence. Add the gain
> to the loss and divide by two to get the
> right result, the judge reasoned."

**Kirlich, Id.** at 1030.

The court of appeals Opinion also denied the district Judge's decision to depart downward based upon the Sentence disparity. The Petitioner had been given a sixty-four (64) month Sentence which was less than the U.S.S.G. had provided prior to the downward **departure.** Without that **departure** the presumptive Sentence would have been in the Range of 121-151 months (Criminal History Category II and Total Offense Level equal to 31).

The Court did not allocate the downward deduction  between the two basis for the downward departures. Instead the court indicated that it was a factor in its decision that pursuant to U.S.S.G. § 2F1.1 Application Note 7(b), the combination of the two factors militated toward a downward departure of seven (7) Offense **Levels.**

The downward departure for the disparity in Sentence was denied by the court of appeals based upon the following:

"On remand the judge should give no weight to
the second factor that influenced the departure:
the disparity between Krilich's presumptive
sentence under § 2F1.1 and Mayor Serallo's
actual sentence, and between Krilich's
sentence and those sentences handed out in
Operation Greylord prosecutions of judicial
corruption during the 1980s. Consideration of
variance among the sentences of different
offenders is permissble only when the disparity
is 'unjustified'. **United States v. Meza**,
127 F.3d 545, 549-50 (7th Cir. 1997). Differences
that occur as a result of a proper application
of the Guidelines in light of the prosecutor's
charging decisions are never 'unjustified' as
**Meza** defines that term Krilich has not argued
that the Guidelines were incorrectly applied
in either his or Sarallo's case. In exchange
for Serallo's cooperation, the prosecutor
refrained from charging his most serious
offenses. That decision greatly reduced Serallo's
sentence but should not rebound to the benefit
of the uncooperative Krilich."

**Krilich, Id. at** 1031.

Thus, the downward departure Granted by the Court based
upon the two factors of the Guideline's overstating the seriousness
of the offense, and the disparity in the Sentence of Petitioner
and his co-defendant without that downward departure  was disallowed
by the court of appeals and the judgment was vacated and the case
was remanded for resentencing.

**6.**

## C.   THE SECOND SENTENCING

Upon Remand the Petitioner's case was reassigned from the previous Judge to a new Judge, Judge David Coar, pursuant to Local General Rule 2:30 F. The health of the Petitioner had significantly deteriorated between his first Sentencing and the time that he appeared for his second Sentencing. Because of his extensive health problems, Petitioner sought a downward departure at his second Sentnecing based upon his "age and infirmity" under U.S.S.G. § 5H1.1.

§ 5H1.1 states that age alone may not be a basis for a departure unless the defendant is both "elderly and infirm", and refers for further guidance as to the meaning of "infirm" to § 5H1.4. § 5H1.1 lists three factors that, if all were present, would justify a downward departure based upon age:

(1).   "the defendant is elderly";

(2).   "the defendant is ... infirm"; and

(3)    "a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."

At the time of his second Sentencing, Petitioner was sixty-nine (69) years of age. Medical testimony was offered by three doctors that he was "infirm" and would not properly be capable of being treated in federal prison. While the Court was disinclined to offer home confinement in lieu of prison, it decided to grant Petitioner a downward departure based upon his constellation of symptoms. Petitioner was sentenced to eighty-seven (87) months imprisonment.

7.

The Sentencing Court explained that the basis for the Sentence and the five (5) Offense Level downward departure was not only U.S.S.G. § 5H1.1, but also § 5H1.4 in the Court's recognition of the Petitioner's "four major illnesses ... - cardiovascular disease, peripheral vascular disease with hypertension, obstructive pulmonary disease and back disease/lumbar and lumbosacral origin." See District court Opinion of November 1, 2000 at p. 10.

In the opinion of the Sentencing Court the combination of all four of those illnesses represented a case of "extraordinary physical impairment" that provided the basis for the "infirmity" part required by § 5H1.1 which when combined with the Petitioner's "age" factor justified a downward departure pursuant to § 5H1.1.

The five (5) Offense Level downward departure resulted in a Total Offense Level of 27 and with Criminal History Category II the Sentencing Range was 78 - 97 months. The Court Sentenced Petitioner once again in the middle of the Sentencing Range at 87 months. See Exhibit No. 2, "Judgment in a Criminal Case", and page 6 "Statement of  Reasons" attached hereto.

The Petitioner appealed his Sentence of 87 months, and the United States cross-appealed as to the five (5) Offense Level downward departure granted by the Sentencing Court.

8.

D.    THE SECOND APPEAL AND THE
      COURT OF APPEALS REMAND

The Opinion of the Court of Appeal for the Seventh Circuit
is to be found at **U.S. v. Krilich,**  257 F.3d 689 (7th Cir. 2001).
Unli e the first Sentencing Court, the second Sentencing Court
concluded that the U.S.S.G. Offense Level did not "significantly
overstate" the seriousness of the crime, and the court therefore
held that the previous departure under Application Note 7(b) was
unnethelss, the court granted a significant Downward
Departure of five (5) offense levels for health reasons. The new
U.S.S.G. Offense Level was 27 and the Sentencing Range was 78 - 97
months, and the district judge chose a  Sentence in the middle of
that Range of 87 months.

The Court of Appeals rejected the Downward Departure stating
that the Downward Departure "can't be reconciled with the first
sentence of § 5H1.4." **Krilich, Id.** at 693. The Court of Appeals
went on to explain its Decision :

> "Does Krilich have an 'extraordinary physical
> impairment'? Is he 'elderly and infirm' or
> 'seriously infirm'? The district court did not
> find so; instead the judge apparently believed
> that any 'unusual' medical condition or combina-
> tion of conditions justifies a departure. This
> can't be reconciled with the first sentence of
> § 5H1.4. 'Extraordinary' is a subset of 'unusual.'
> We have held that the limit to 'extraordinary'
> conditions must be taken seriously. **See**
> **United States v. Woody,** 55 F.3d 1257,1275-76 &
> n. 15 (7th Cir. 1995). Almost everyone is

**9.**

'unusual' in some respect, and many septua-
genarians have conditions similar to Krilich's.
Yet § 5H1.1 and § 5H1.4 put normal age-related
features off limits as grounds for reduced
sentences. Older criminals do not receive sen-
tancing discounts. Many persons in poor health
are confined in federal prisons. If the medical
problem is extraordinary in the sense that
prison medical facilities cannot cope with it,
then a departure may be appropriate. **See
United States v. Sherman,** 53 F.3d 782, 787
(7th Cir. 1995). To justify such a conclusion,
however, the court 'must ascertain, through
competent medical testimony, that the defendant
needs constant medical care, or that the care he
does need will not be **available** to him should
he be incarcerated.' **United States v. Albarron,**
233 F.3d 972, 978 (7th Cir. 2000). Or a bedridden
person would be as effectively imprisoned at home
as in jail; the physical condition itself does
the imprisoning. But the district court found
that the Bureau of Prisons could treat Krilich's
conditions, and he is not bedridden, so these
rationales for departures are missing."

**Krilich, Id.**

After examining the medical testimony and same evidence
that the district court heard during its Sentencing proceedings,
the Court of Appeals concluded that :

"Krilich did not establish that his condition is
either 'debilitating' or 'extraordinary,' and a
departure therefore conflicts with norms established
by § 5H1.1 and § 5H1.4."

**Krilich, Id. at** 694.

10.

The Court of Appeals once again vacated the Judgment of the District Court for the second time and Remanded the case with instructions to impose a sentence in the range of 135 to 168 months without any of the previously granted Downward Departures. The Court of Appeals concluded that "A generic statement that a defendant's circumstances are out of the 'heart-land' may not be used to override limitations written into the Guidelines. [citing] **Koon v. United States,** 518 U.S. 81, 92-96; 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); **Krilich,** 159 F,3d at 1030." **Krilich, Id.**

### E.    THE THIRD SENTENCING

The District Court held a third Sentencing, and Petitioner presented extensive testimony from physicians as to his further deterioration of his health not only since the first Sentencing, but also since the more recent second Sentencing.  Petitioner sought Downward Departures based upon his age and infirmity pursuant to U.S.S.G. § 5H1.1 and the changes in his health condition evincing further deterioration justifying application of U.S.S.G. § 5H1.4.

The District Court heard all of the testimony from several physicians but felt bound to follow the Seventh Circuit's Remand instructions and imposed a Sentence at the bottom of the U.S.S.G. Sentencing Range of 135 months without the benefit of any further Downward Departures. See Exhibit No.3, "Judgment in a Criminal Case" and extended "Statement of Reasons " attached hereto.

11.

## F.  THE THIRD APPEAL

Petitioner once again appealed his third Sentence based upon the refusal of the District Court to consider his intervening health changes since his second Sentencing only a few years earlier. The Court of Appeals Denied Petitioner's appeal of his third Sentence and Petitioner filed a Petition for Writ of Certiorari with the Supreme Court. The Petitioner clearly summarized the further deteriorarion of Petitioner's health which would have justified reimposition of the previous Downward Departures pursuant to both U.S.S.G. §§ 5H1.1 and 5H1.4. The Supreme Court Denied **certiorari**. See Exhibit No. 4, Petition for Writ of Certiorari, pp. 4-8 regarding those health issues. Petitioner currently remains incarcerated at a Federal Medical Center serving a Sentence of imprisonment of 135 months.

12.

III.    **THE STATUTORY VIOLATIONS THAT WRONGLY IMPRISON THE PETITIONER AT THIS TIME**

A.    **THE PRE-PROTECT ACT STANDARDS THAT SHOULD HAVE APPLIED TO PETITIONER'S SENTENCINGS**

The First Circuit Court of Appeals has just recently decided a case on appeal in which that court clearly explains the applicable standard of review for certain issues on appeal from departures from the sentencing guidelines. The case of **United States v. Thurston,** Nos. 02-1966, 02-1967 (1st Cir. February 4, 2004) extensively discusses the standard of review of Sentences on appeal both now and prior to the PROTECT Act, On April 30, 2003, section 401 of the PROTECT Act became effective. That section chaged the applicable standard of review for certain issues in appeals from departures from the sentencing guidelines. Section 401 amended 18 U.S.C. § 3742(e).

This Petitioner was sentenced all three times prior to the PROTECT Act becoming law. As the First Circuit noted in **Thurston :**

> "This changed the law. Under **Koon v. United States,** 518 U.S. 81 (1996), the courts of appeals were not to review a departure decision <u>de novo</u>, but were to ask whether the sentencing court abused its discretion in granting the departure. **Id.** at 91, 96-100.In appeals from sentencing departures, we had, before the PROTECT Act, engaged in a three-part review: '(1) we determined whether the stated ground for departure [was] theoretically permissible under the guidelines; (2) if so, we examine[d] the record to assess whether there [was] factual support; and (3) we determine[d] the appropriateness of the degree of departure.' **United States v.**

**13.**                                                          _

**Bogdan**, 302 F.3d 12, 16 (1st Cir. 2002). Whether
the stated ground for departure was theoretically
permissible -- the first part -- was a question of
law reviewed <u>de</u> <u>novo</u>.**United States v. Bradstreet**,
207 F.3d 76, 81 (1st Cir. 2000); **see also United
States v. Diaz,** 285 F.3d 92, 97-98 (1st Cir. 2002).
Under **Koon**, our review under the remaining two
parts was for abuse of discretion only. **See Koon,**
518 U.S. 96-100; **United States v. Lujan,**
324 F.3d 27, 31 n.5 (1st Cir. 2003); **United States v.
Martin**, 221 F.3d 52, 55 (1st Cir. 2000)."

**Thurston, Id.** at pp. 41-42.

The **Thurston** court held that there was no unfairness to
defendants in Congress's requiring that the appellate courts give
a closer look to whether the district court committed any error
in decising that the guidelines permitted a departure. **Thurston,
Id. at** p. 45. The **Thurston** court held that :

"...[A] court of appeals, in reviewing a departure
under § 3742(e)(3)(B)(i) and (ii), must accept and
not look behind the Sentencing Commission's determi-
nation that a particular categorical basis for
departure is permissible or impermissible. At the
same time, we agree with the government that under
subparagraph (iii), a court of appeals is free to
weigh the purposes of sentencing, the intentions of
the Commission, and any other relevant considerations
in decising whether a particular departure is
'justified by the facts of the case.' This reading
both reaffirms the authority of the Sentencing
Commission and broadens appellate review of sentencing
departures on grounds not considered by the Commission."

**Thurston, Id. at** pp. 48-49.

14.

However, prior to the PROTECT Act, § (e)(3)(B)(iii) read as follows:

"is not justified by the facts of the case; or"

After the PROTECT Act that criterion was modified as follows:

"With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review **de novo** the district court's application of the guidelines to the facts."

Thus, the court of appeals reviewed subsection (iii) regarding "the facts of the case" de novo and essentially was allowed to "second-guess" the determinations made by the district court. This new standard of review was not in effect during any of the three Sentencing appeals by Petitioner, and yet, according to the record that is exactly what the court of appeals did.

The district court observed the demeanor and behavior of the then defendnat Petitioner over the course of several weeks of pre-trial and trial proceedings. It directly observed how "infirm" he was, and also the effect of his health condition and his numerous ailments upon same. Yet, the court of appeals who had never laid eyes upon the Petitioner, and from only the cold record of the facts as set down, violated the pre-PROTECT Act standards of review, and engaged in the post-PROTECT Act new review of all of the facts that went into the district court's Sentencing determinations. The review that ought to have been limited to review only for an abuse of discretion was instead reexamined de novo as would only have been permitted by the post-PROTECT Act standards. **Koon** guided the applicable standard of review in the case of this Petitioner, and yet the court of appeals ignored it.

**15.**

**B.  WHETHER THE DOWNWARD DEPARTURE WAS
REQUIRED TO BE "JUSTIFIED BY THE
FACTS OF THE CASE".**

The pre-PROTECT Act standard of appellate review was whether
the downward departure granted by a district court represented an
abuse of discretion only. **Thurston, Id.** at 42 citing in support
thereof **Koon,** 518 U.S. 96-100; **United States v, Lujan,** 324 F.3d 27,
31 n.5 (1st Cir. 2003); and **United States v. Martin,** 221 F.3d 52,
55 (1st Cir. 2000).  The facts of the case as determined by the
district court had to be accepted by the court of appeals.

At the first Sentencing, the district court based its
decision to depart downward on two approved portions of the
U.S.S.G. The first departure was the court's conclusion that
pursuant to U.S.S.G. § 2F1.1 Application Note 7(b), the Guidelines
overstated the seriousness of this Petitioner's offense. This
downward departure was one that was authorized by the Guidelines
and under pre-PROTECT Act stndards, the court of appeals should
only have examined the **extent** of the departure and not whether
the departure was justified at all. In other words, there should
not have been a de novo review of that departure.

The second factor that the sentencing court granted a downward
departure was the perceived Sentence Disparity between the Bribee
who had solicited and in fact had extorted the bribe given a
Sentence of only six months imprisonment, and the Briber who was
in fact extorted into giving the bribe with a presumptive sentencing
range of 121 to 151 months. Insofar as the court was concerned, that
was too extreme of a disparity in the Sentence for two defendants

**16.**

guilty of having committed essentially two different ends of the
same criminal act.

The court of appeals revisited the district court's implemen-
tation of Application Note 7(b) to U.S.S.G. § 2F1.1 and essentially
engaged in de novo review of the "seriousness of the Petitioner's
offense" as set-out by the Guidelines. Such an analysis was not
permitted under pre-PROTECT Act standards.

The court of appeals also dismissed the downward departure for
sentence disparity essentially removing that factor as a downward
departure under the Guidelines.  However, sentence disparity was
a factor that could justify a downward departure under the Guidelines
which stated that when a case fell outside the "heartland" of the
Guidelines , departures both upward and downward could be used
by the court to reflect unusual cases. The district court felt
that the case of this Petitioner was such an unusual case that
justified such a downward departure.

At the second Sentencing there was a new district judge
appointed for that purpose. The district court once again granted
a downward departure to Petitioner based upon two U.S.S.G.
authorized downward departures of § 5H1.1 for "age and infirmity";
and,§ 5H1.4 for his medical conditions which in the opinion of
that court represented a case of "extraordinary physical impairment"
that justified a five (5) Offense Level downward departure.

Once again the court of appeals engaged in a de novo review
of the facts in the case from the sterile record of transcripts
having never observed the demeanor and physical condition of this
Petitioner. Once again the pre-PROTECT Act standard of appellate review

**17.**

was violated by the court of appeals. Instead the court of appeals used the current PROTECT Act standards in deciding whether the particular downward departures were "justified by the facts of the case."

As the **Thurston** court held in reaching its decision:

" Accordingly, we hold that where the Commission has expressly considered and forbidden or approved (even if discouraged) a particular factor for departure, the court of appeals is bound to accept that determination and cannot revisit it under subparagraphs (i) or (ii) of § 3742(e)(3)(B). [Note] 22. So in Thurston's case, because the Commission has determined that departures based on exceptional good works are authorized, we do not inquire whether such departures comport with subparagraphs (i) or (ii), and instead proceed directly to the question whether the departure 'is not justified by the facts of the case.' § 3742(e)(3)(B)(iii)."

**Thurston, Id.** p. 54.

In the case of this Petitioner, not only did the Seventh Circuit court of appeals revisit the various downward departures under subparagraphs (i) and or (ii), but also inquired under the new PROTECT Act language in subparagraph (iii) as to whether those downward departures were "justified by the facts of the case." The decisions of the Seventh Circuit court of appeals in the two Sentencings of this Petitioner both violated the statutory law as set-out in § 3742 at that time and under the pre-PROTECT Act standards then in effect and the Supreme Court decision in **Koon,** violated the statutory rights of Petitioner as to his Sentences that were given him at both district court Sentencings.

IV.    WHY THIS COURT OUGHT ENTERTAIN THIS PETITION
PURSUANT TO 28 U.S.C. § 2241 AND NOT
"RECHARACTERIZE" IT AS ONE MORE PROPERLY
BROUGHT PURSUANT TO 28 U.S.C. § 2255 .

This Petitioner cannot obtain relief as to the statutory
violations that amount to constitutional violations of his Fifth
Amendment right to "Due Process" in the Seventh Circuit for the
reasons set-forth in Parts II and III herein. It was the violation
of 18 U.S.C. § 3742 statutory standards by the Seventh Circuit
court of appeals that created his currently illegal Sentence.
The district court in the Seventh Circuit that would hear his
§ 2255 motion would be bound to reject it based upon the court of
appeals decisions in Petitioner's case. In that regard, a motion
pursuant to 28 U.S.C. § 2255 would be "inadequate and ineffective"
to test the legality of Petitioner's Sentence.

Furthermore, the matter would never even reach a district
court because Petitioner has previously filed § 2255 motions, and
this Petition would be a "Successive § 2255 motion" subject to
the "gatekeeping" provisions of § 2255 ¶ 8. A motion to the court
of appeals for Leave to file a successive § 2255 would have to be
made,and this Petition would never get past that stage of the
proceedings as the court of appeals has already decided the matters
raised within this Petition.

Yet, as is clear herein this Petition, there have been major
errors of statutory interpretation which now result in imprisoning
this Petitioner in violation of the law and the United States
Constitution. A Petition for Writ of Habeas Corpus ought be issued.

**19.**

## V.    CONCLUSION AND PRAYER FOR RELIEF

In consideration of all of the foregoing, Petitioner Prays that his current Sentence of imprisonment be declared in violation of 18 U.S.C. § 3742 **at the time that he was sentenced** both the first and second times (as well as the third time) and that such statutory violation amounted to a constitutional violation of Petitioner's Fifth Amendment right to "Due Process" under the United States Constitution.

As a result, the first Sentence of sixty-four (64) months ought to be reinstated and Petitioner would be allowed to immediately be set free from his current imprisonment. Furthermore, any excess time of imprisonment is Moved to be credited to his Sentence of Supervision of three years that had been imposed properly at that time.

In the alternative, Petitioner Prays that his second Sentence of eighty-seven (87) months be reinstated, and Petitioner would also be allowed to immediately be set free from his current imprisonment. Furthermore, any excess time of imprisonment is Moved to be credited to his Sentence of Supervision of three years that had been imposed properly at that time.

The law in this First Circuit after **Thurston** is such that Petitioner's current Sentence of imprisonment is unlawful and in violation of the United States Constitution. Petitioner Prays for his immediate release.

20.

Respectfully submitted,

Robert Krilich, Sr., Petitioner Pro Se
Federal Registry No. 06108-424
Housing Unit J-B
Federal Medical Center Devens
P. O. Box 879
Ayer , MA  01432


## DECLARATION MADE PURSUANT TO 28 U.S.C. § 1746

I **HEREBY DECLARE** under penalty of perjury that the facts and information and attached Exhibits in this PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2241 are true and correct based upon my best information and belief.

June  7, 2004

Robert Krilich, Sr., Declarant


## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that I have mailed an original copy of the attached PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2241 by first-class mail, postage pre-paid to the following:

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CLERK OF THE COURT
U.S. COURTHOUSE
ONE COURTHOUSE WAY
BOSTON,   MA  02210

**AND,** placed same in the U.S. mail by depositing same in the Institution's legal mail box for forwarding on  June 7 , 2004 .

21.