IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| | ) No. 94 CR 419 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| Robert S. Krilich, Sr. | ) |

## MEMORANDUM OPINION

Defendant Robert S. Krilich, Sr. is before this Court for sentencing. For the reasons stated below, this Court sentences Krilich and commits him to the Bureau of Prisons for a term of 87 months to be followed by three years supervised release.

### Background

Krilich was convicted of fourteen counts of fraud under 18 U.S.C. § 1014, and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d). On June 23, 1997, Judge Grady sentenced Krilich to sixty-four months in prison. Krilich appealed both his conviction and his sentence and the United States cross-appealed his sentence. On October 27, 1998, the United States Court of Appeals for the Seventh Circuit affirmed Krilich's convictions but vacated Judge Grady's sentencing order and remanded the case for re-sentencing. On October 8, 1999, Krilich's case was reassigned to this Court pursuant to Local General Rule 2.30F.

According to the Seventh Circuit, this Court was to consider on remand the revenue that Krilich's bribery scheme[1] caused the Internal Revenue Service to lose. See United States v. Krilich, 159 F.3d 1020, 1031 (7th Cir. 1999) ("the existence of a substantial tax loss is undeniable").

---

[1] Bribery was one of the predicate acts for Krilich's RICO conspiracy conviction.

Additionally, the Seventh Circuit stated that this Court "should give no weight to . . . the disparity between Krilich's presumptive sentence under § 2F1.1 and [the bribee,] Mayor Sarallo's actual sentence." Id. at 1031. Beginning on January 28, 2000, this Court heard expert testimony to undertake calculation of the tax loss to the government, despite the Seventh Circuit's implication that a precise calculation would be difficult. Id. ("[c]alculating the actual loss in tax revenues from providing investors with a tax shield that the law does not allow is quite complex . . ..")

The government presented testimony from David Joseph Ross, who is a senior vice president of a consulting firm specializing in economic analysis of a variety of legal and regulatory matters. Ross calculated both the benefit that Krilich would have received from being able to borrow at a tax-free interest rate and the loss that the United States Treasury would have suffered had Krilich been able to borrow at a tax-free interest rate. Assuming that the bonds were tax-free, Ross concluded that both the benefit to Krilich and the loss to the government would be about $14.2 million. Crediting and relying only on the estimated actual loss to the government from lost tax revenue (as opposed to the benefit to Krilich), this Court announced Krilich's sentence and indicated that a written order would be forthcoming.

Before this Court issued its written statement of reasons, the Internal Revenue Service issued an adverse determination with respect to the bonds at issue in this case. The IRS found that the interest on the bonds was not tax free as originally intended. Krilich subsequently moved to set aside this Court's oral ruling regarding tax loss. According to Krilich, since the IRS determined that the bond interest was taxable, the underlying premise for his sentence enhancement – a tax loss of $14.2 million – ceased to exist. Krilich filed a memorandum in support of his motion to which the government filed a response and to which Krilich, in turn, filed a reply. For the reasons stated

below, this Court's initial determination of Krilich's sentence remains the same, albeit for slightly different reasons.

## Analysis

"Because the underlying conduct for [Krilich's] RICO conviction was bribery, the relevant [sentencing] guideline is § 2C1.1(b)(2)(A)." Krilich, 159 F.3d at 1029. That section provides that "if the value of . . . the loss to the government from the offense . . . exceed[s] $2,000, [the offense level will] increase by the corresponding number of levels from the table in § 2F1.1 " U.S. Sentencing Guidelines Manual § 2C1.1(b)(2)(A). The table set forth in Section 2F1.1 varies the sentencing range . . . depending on the amount of loss." United States v. Lauer, 148 F.3d 766, 767 (7th Cir. 1998). A loss greater than $10,000,000, increases the offense level by fifteen levels. See U.S. Sentencing Guidelines Manual § 2F1.1(b)(1)(P). The loss mentioned in Section 2F1.1 can be either an actual loss or an intended loss, whichever is greater. Id. (citing § 2F1.1, Application Note 7) (further citations omitted). An intended loss is measured by the amount that the defendant put at risk. See Lauer, 148 F.3d at 768. Intended loss is not mitigated by a defendant's hope that the victimized party not actually be harmed. See id.

## Loss to the Government

To calculate the actual loss to the government, the government's expert collected data and compared interest rates on tax-free debt instruments and taxable debt instruments that were otherwise equivalent. The data indicated the difference between the rates demanded for investment in taxable as opposed to tax-free securities. Based on the data, Ross estimated the interest rate that Krilich would have had to pay if he had been unable to obtain tax-free bonds to finance the project.

Because tax-free bonds financed the project, the investors did not pay taxes to the United States Treasury on the interest that they received. Conversely, if the interest on the bonds had not

been tax free, the investors would have had to pay taxes on the interest received. Therefore, the United States lost the benefit of the taxes it would have received but for the fact of the improper attempt at tax-free financing. Applying the interest data previously discussed, Ross concluded that between 1986 and 1991, the loss to the government, assuming a 28% marginal tax rate for investors, would have been $16.5 million. Using the average marginal tax rate for all United States taxpayers, the loss would have amounted to $14.2 million. This Court credited Ross's testimony and found that the government suffered a loss of $14.2 million.

As noted above, after this Court's hearing on actual tax loss and after the oral ruling, the IRS determined that the interest on the bonds in question was taxable. In other words, the "actual loss" estimated by the government's expert was no longer an actual loss. The interest on the bonds turned out to be taxable, not tax-free as intended. The absence of an actual loss of $14.2 million, however, does not save the day for Krilich because he intended the government to lose that revenue. In the parlance of the Lauer case, Krilich put $14.2 million "at risk" through his bribery scheme. See Lauer, 148 F.3d at 768.[2] Even though Krilich's bribery scheme did not result in the issuance of tax-free bonds, he intended to have tax-free bonds issued. Indeed, this was the ultimate goal of Krilich's bribe. At bottom, if things had turned out as Krilich had planned, the tax-free bonds would have been issued and the government would be deprived of $14.2 million in tax revenue. This intended loss is no less tied to Krilich's bribery scheme than the actual loss that would have befallen the government.[3]

---

[2] Ross's analysis regarding the actual tax-revenue loss to the government is equally valid with respect to intended loss. In hindsight, Ross's calculations just turned out to be hypothetical estimates of what the government would have lost.

[3] Because the Court determines that Krilich intended that the government lose $14.2 million in revenue, it is not necessary to address the government's waiver argument.

-4-

Krilich counters both the loss and the gain calculations by positing that the project actually undertaken through the tax-free financing was not economically feasible at taxable (higher) interest rates. Krilich therefore concludes that Ross' comparisons between taxable financing and tax-free financing is illusory. In support of his theory, Krilich does not offer a single "fact." Instead, he relies on the testimony of Stan Lazar, an expert in real estate accounting (not real estate finance). Lazar opined that Industrial Revenue Bond Financing is used to create incentives for builders to undertake projects that otherwise would not be built. Neither Krilich nor Lazar, however, offered any support for this sweeping statement. This Court is unwilling to conclude that the mere fact that a condition of financing was that 20% of the project be devoted to low income housing renders the project economically unsound. It is at least equally plausible that Internal Revenue Bond financing was obtained (by way of bribe) to increase the profits from an already viable project simply because of greed. It would have been relatively simple for Krilich to reconstruct the financial analysis of the project and compare the projected results of alternative financing to counter Ross' assumptions. Absent other evidence, the Court rejects Krilich's unsupported analysis because Ross' approach is reasonable.

Krilich also argues that he received no net benefit from the proceeds of the financing. Relying on Application Note 2 to Guideline 2C1.1, Krilich argues that where a contract is awarded in return for a bribe, the measure of net benefit is the defendant's profit on the contract. Krilich states further that there was no profit on the contract. He asserts that there was a loss. The Court reluctantly concludes that Krilich may be correct on this latter factual point, but notes that it is

legally irrelevant.[4] Since Krilich's offense conduct was <u>intended</u> to cause the government a $14.2 million loss, that amount will be used for applying §2F1.1.

The Court finally rejects Krilich's argument that the "intended loss" doctrine is inapplicable in this case. Krilich analogizes to cases involving fraudulent loan applications and fraudulent contract procurement. Such analogies are not applicable here. In fraudulent loan applications and fraudulent contact procurement cases, an exception is made under the intended loss doctrine for fraudfeasors who intend to perform under the contract or loan. See, e.g., United States v. Schneider, 930 F.2d 555, 558 (7th Cir. 1991). This exception exists because these fraudfeasors do not actually intend to cause a loss to the government equal to the amount of the loan or the value of the contract. Quite the contrary, these fraudfeasors hope to repay the full loan or perform the full value of the contract. See, e.g. id. In stark contrast to these cases, Krilich intended to cause the government a tax loss of approximately $14.2 million despite his attempt to and intention to "perform" under the contract obtained as a result of his bribe to Mayor Sarallo. Unlike the loan or contract procurement cases, Krilich's intent throughout was to have tax-free bonds issue to finance his project. Tax-free bonds would have deprived the government of revenue that could have otherwise been collected by taxing the interest on taxable bonds.

The parties do not dispute that prior to any consideration of departure, Krilich's base offense level is 17. Since the Court determines that Krilich intended the government to suffer a $14.2 million tax loss, the pre-departure base level is increased 15 levels to 32.

---

[4] This Court's reluctance stems from a lingering doubt as to whether the "contract" obtained in return for the bribe is limited to the tax-free financing or, as he suggests, encompasses the entire building project. Moreover, Krilich's evidence of detriment (offsetting any benefit he enjoyed) includes several questionable items such as: $2.5 million or more for criminal defense counsel and incarceration-related matters, the $5 million in personal funds for the purchase of the subseries I bonds (without offsetting that amount by the value of the 26 completed townhouses), and allocation of office and maintenance expenses to the Oakbrook Terrace Project.

-6-

## Departure Based on Krilich's Medical Condition

Krilich also moves for downward departure on the basis of his medical and psychological conditions. Dr. Richard Herbert, who is no longer engaged in active practice, testified that Krilich was a patient of his before Krilich's incarceration and that he saw Krilich a number of times before his incarceration. On cross examination, Dr. Herbert acknowledged that he had not been listed as one of Krilich's treating physicians on forms that Krilich executed upon entry into the custody of the Bureau of Prisons. Additionally, Dr. Herbert stated that he treated Krilich several times "to the extent that I had access to him. He ... came to my office. I offered treatment and I gave him advice what should be done." Tr. Proceedings Feb. 1, 2000 at 283-84. Dr. Herbert had no records of Krilich's visits, and never did a complete history of Krilich. Dr. Herbert has no particular expertise in the field of cardiology, but this did not deter him from expressing numerous opinions about Krilich's heart condition(s) and the care provided, or not provided, by the Bureau of Prisons. This Court gives no weight to Dr. Herbert's testimony.

Dr. Bernard Rubin is a psychiatrist who testified that Krilich is suffering from at least four serious physical infirmities: (1) chronic cardiovascular disease; (2) chronic peripheral vascular disease with hypertension; (3) obstructive pulmonary disease; and (4) back disease of lumbar and lumbosacral origin. According to Dr. Rubin, Krilich also suffers from a major depressive disorder, characterized by insomnia, anorexia, "distractability", hopelessness, suicidal thinking and tearfulness. The supplement to the Presentence Investigation Report also sets out the medical conditions that Mr. Krilich suffers from and the medications he is receiving.

Dr. Rubin also opined as to the effect that prison would have on Krilich. Dr. Rubin believes that there are three difficulties with treatment of physical or psychological problems in prison: (1) prisons are organized punishment; (2) they are organized for security; and (3) medical, surgical and

-7-

psychological concerns are secondary. Therefore, he concludes that Krilich's various conditions can best be addressed outside of an institutional setting.

The Government argues that because many of Krilich ailments are chronic and because he would suffer from them whether or not he was incarcerated, no departure is warranted. The Court disagrees. Krilich's age and the number and complexity of his ailments render him unlike the "typical" defendant who appears in this court for sentencing. While this Court is aware that the mandatory minimum requirements of the Sentencing Guidelines have created an increased need to provide geriatric treatment for inmates, Krilich's health issues present an unusual profile. The conditions of confinement will undoubtedly aggravate his conditions and make treatment more difficult. Therefore, a departure is warranted. The question, therefore, is the level of departure.

Krilich argues for a substantial departure to a level that would require his immediate release on the theory that treatment of his aliments by the Bureau of Prisons has been inadequate. The issue, however, is whether the Bureau of Prisons is incapable of providing medically reasonable treatment to Krilich. While the manner in which he has been treated in the past is some indication of standards within the Bureau of Prisons and therefore somewhat predictive of future treatment, the issue is broader than whether doctors hired by Krilich would have treated his conditions differently.

This Court has no doubt that a person of Krilich's means could obtain first class medical and psychological treatment outside of a prison environment and will assume, without deciding, that the treatment that Krilich could receive outside of prison would be superior to the treatment he is receiving from the Bureau of Prisons. The Court cannot, however, conclude that the treatment that Krilich has received and which he is likely to receive in the future from the Bureau of Prisons is so lacking in quality that this Court should depart to a level that requires his immediate release, or to a level at which some alternative to imprisonment would be available. Unfortunately, Krilich has

-8-

approached the question of departure as an all or nothing proposition. The focus of his proofs and arguments has been an all out assault on continued confinement. He has attempted to show that the BOP has not and will not adequately treat his medical and psychological conditions and therefore the court should depart to level that will allow some form of home detention which permit treatment by his personal treaters. In his single-minded thrust to avoid further incarceration, Krilich has neglected to provide the court with information necessary to readily determine an appropriate departure that takes into account his conditions, measured by the particular manner in which they impose upon him hardships outside of the heartland. Moreover, the guidelines themselves provide little textual guidance in determining the extent of downward departures.

§5H1.4 of the Guidelines provides that while physical condition (of a defendant) is not "ordinarily relevant" in determining whether a departure is warranted, "an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range." The example contained in the guideline refers to a defendant who is so seriously ill or infirm that "home detention may be as efficient as, and less costly than, imprisonment" There is no question but that a sentence that would have Krilich pay the cost for treatment of his various ailments would be less costly to the government. It is unclear whether such a sentence would be more "efficient" than a period of imprisonment. If efficiency in this context refers to the possibility that the Bureau of Prisons lacked the ability to treat the defendant in a BOP facility and would have to transport the defendant to a location with the attendant travel and security costs, then there is no showing that the Krilich's circumstances warrant such an approach. If the term is to be read more expansively, taking into account the broad goals of sentencing (See 18 U.S.C. §3553(a)(2)), it is clear that those goals are not served by departing to a level where Krilich escapes a substantial prison term. Neither his physical condition nor the ends of sentencing are served by such a result. Krilich stands convicted

if serious crimes which deserve a serious sanction. The fact that he suffers significant medical ailments serves as a reason to mitigate the punishment, not to eliminate it.

None of Krilich's four major illnesses (cardiovascular disease, peripheral vascular disease with hypertension, obstructive pulmonary disease and back disease/lumbar and lumbosacral origin), taken alone, justify a departure. In combination with each other, they present treatment and quality of life difficulties that fall outside the heartland. The court will therefore depart one level for each of the four conditions and an additional level for the interaction of the ailments.

### Departure Based on Sentencing Disparity

Krilich also sought a departure based on the argument that the loss amount overstates the seriousness of his conduct. Intertwined within this argument is Krilich's argument of sentencing disparity. According to Krilich, he was seduced into paying the bribe by Mayor Sarallo's officials who were "on the make." These officials received sentences much less severe than that which is called for under the Guidelines for Krilich. Krilich's argument in this regard is exceptionally misguided. While wise enough not to argue that Judge Grady's earlier ruling is the law of the case, Krilich foolishly argues that this departure determination is "certainly entitled to great weight." Krilich's argument amazingly ignores Seventh Circuit precedent that could not be more on point – namely, the appellate opinion in this case, expressly reversing the decision that Krilich asks this Court to adopt here. See United States v. Krilich 159 F.3d 1020, 1021-22 (7th Cir. 1998). The Seventh Circuit could not have more clearly precluded such consideration. Id. ("on remand the Judge should give no weight to....the disparity between Krilich's presumptive sentence under §2F1.1 and Mayor Sarallo's actual sentence . . ..") In addition, as the Government notes, Krilich has not argued on remand that the Guidelines were misapplied in either his or Sarallo's case. The request to depart further is denied.

## CONCLUSION

For the foregoing reasons, this Court sentences Robert S. Krilich, Sr. and commits him to the Bureau of Prisons for a term of 87 months to be followed by three years supervised release.

DATE: November 1, 2000          ENTER:

*[signature]*
DAVID H. COAR, U.S. DISTRICT COURT JUDGE

*PSI SENTENCING*
*EXHIBIT No. 1*

AO 245 S (Rev. 4/90) Sheet 1 - Judgment in a Criminal Case

# United States District Court

NORTHERN District of ILLINOIS - EASTERN DIV.

UNITED STATES OF AMERICA
v.
Robert Krilich
(Name of Defendant)

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: 94 CR 419-1

Dennis Berkson
Defendant's Attorney

THE DEFENDANT:

☐ pleaded guilty to count(s) _____
☒ was found guilty on count(s) 1 through 15 of the indictment _____ after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC 1962(d) | Racketeering | 6/90 | 1 |
| 18 USC 1014 and 2 | False statements to banks | 8/91 | 2 through 15 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____ and is discharged as to such count(s).
☒ Count(s) 16, 17, 18 and 19 (is)(are) dismissed on the motion of the United States.
☒ It is ordered that the defendant shall pay a special assessment of $ 750.00 , for count(s) 1 through 15 , which shall be due ☒ immediately ☐ as follows.

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 10/21/30

Defendant's Mailing Address:
1771 Leuther Lane
Oakbrook Terrace, Illinois 60181

Defendant's Residence Address:
same as above

June 23, 1997
Date of Imposition of Sentence

Signature of Judicial Officer

Judge John F. Grady
Name & Title of Judicial Officer

JUNE 30, 1997
Date

AO 245 S (Rev. 4/90) Sheet 2 - Imprisonment

Defendant: Robert Krilich
Case Number: 94 CR 419-1

Judgment—Page 2 of 5

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of sixty-four (64) months on each count from one through fifteen to run concurrently.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States marshal.
☐ The defendant shall surrender to the United States marshal for this district.
   ☐ at _____ a.m./p.m. on _____
   ☐ as notified by the United States marshal.
☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons at such time when it becomes relevant.
   ☐ before 2 p.m. on _____
   ☐ as notified by the United States marshal.
   ☐ as notified by the probation office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____ at _____ with a certified copy of this judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245 S (Rev. 4/90) Sheet 3 - Supervised Re.

Defendant: Robert Krilich
Case Number: 94 CR 419-1

Judgment—Page 3 of 5

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of __three__ (3) years

While on supervised release, the defendant shall not commit another federal, state, or local crime and shall not illegally possess a controlled substance. The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

☒ The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

☐ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

☒ The defendant shall not possess a firearm or destructive device.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime. In addition:

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer within 72 hours of any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 S (Rev. 4/90) Sheet 5 - Fine

Defendant: Robert Krilich
Case Number: 94 CR 419-1

Judgment—Page 4 of 6

## FINE

The defendant shall pay a fine of $ 1,000,000.00 ____. The fine includes any costs of incarceration and/or supervision.

☒ This amount is the total of the fines imposed on individual counts, as follows:

1 through 15.

☐ The court has determined that the defendant does not have the ability to pay interest. It is ordered that:

☐ The interest requirement is waived.
☐ The interest requirement is modified as follows:

This fine plus any interest required shall be paid:
☒ in full immediately.
☐ in full not later than __ ____ ____ ____ __ __
☐ in equal monthly installments over a period of __ ____ months. The first payment is due on the date of this judgment. Subsequent payments are due monthly thereafter
☐ in installments according to the following schedule of payments:

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed. See 18 U.S.C. § 3614

AO 245 S (Rev. 4/90) Sheet 6 - Restitution and Forfeiture

Defendant: Robert Krilich
Case Number: 94 CR 419-1

Judgment—Page 5 of 6

## RESTITUTION AND FORFEITURE

### RESTITUTION

☒ The defendant shall make restitution to the following persons in the following amounts:

| Name of Payee | Amount of Restitution |
|---|---|
| National Hole-in-One Association | $40,000.00 |

Payments of restitution are to be made to:
☐ the United States Attorney for transfer to the payee(s).
☒ the payee(s), to bear interest at the federal statutory rate from the date the Hole-in-One Association made payment until the date the Association receives the restitution payment from defendant.

Restitution shall be paid:
☒ in full immediately
☐ in full not later than _____
☐ in equal monthly installments over a period of _____ months. The first payment is due on the date of this judgment. Subsequent payments are due monthly thereafter
☐ in installments according to the following schedule of payments:

Any payment shall be divided proportionately among the payees named unless otherwise specified here.

### FORFEITURE

☒ The defendant is ordered to forfeit the following property to the United States: the sum of $6,241,506.99 plus $2,000,000.00 in connection with count 1 of the indictment and the sum of $428,590.63 in connection with counts 2 through 15 of the indictment.

AO 245 S (Rev. 4/90) Sheet 7 - Statement of ~~~~ sons

Defendant:
Case Number:

Judgment—Page __6__ of __6__

## STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

OR

☒ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary): as modified at the numerous post trial sentencing guideline hearings the court has conducted, as reflected in 2 revised presentence reports to be filed by the probation officer.

**Guideline Range Determined by the Court:**

Total Offense Level: __24__

Criminal History Category: __II__

Imprisonment Range: __57__ to __71__ months

Supervised Release Range: __2__ to __3__ years

Fine Range: $ __15,000__ to $ __14,000,000.00__

☐ Fine is waived or is below the guideline range, because of the defendant's inability to pay.

Restitution: $ __40,000.00__

☐ Full restitution is not ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by application of the guidelines.

OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

OR

The sentence departs from the guideline range

☐ upon motion of the government, as a result of defendant's substantial assistance.

☒ for the following reason(s): The court determined that the sentencing level of 31, derived from the Loss Table at Sec. 2F1.1 of the Guidelines, significantly overstates the seriousness defendant's conduct. See paragraph 7(G) of the commentary to Sec. 2F1.1. Also, the guideline range would have resulted in an egregiously disproportionate sentence for this defendant compared to the six month sentence received by the recipient of this defendant bribes.

Minute Order Form (rev. 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | JOHN F. GRADY | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 94 CR 419 | Date | JULY 7, 1997 |
| Case Title | USA V ROBERT KRILICH | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ☐ Status hearing ☐held ☐continued to ☐set for ☐reset for _____ at _____
(6) ☐ Pretrial conf ☐held ☐continued to ☐set for ☐reset for _____ at _____
(7) ☐ Trial ☐Set for ☐reset for _____ at _____
(8) ☐ ☐Bench Trial ☐Jury Trial ☐Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐without ☐with prejudice and without costs ☐by agreement ☐pursuant to
   ☐FRCP 4(f) (failure to serve) ☐General Rule 21 (want of prosecution) ☐FRCP 41(a)(1) ☐FRCP 41(a)(2)
(10) ☒ [Other docket entry] The judgment order dated June 30, 1997 is amended to read: The defendant was found guilty on counts 1 through 15 of the superceding indictment; counts remaining are dismissed on the motion of the United States.
(11) ☐ [For further detail see ☐order on the reverse of ☐order attached to the original minute order form.]

| ☐ No notices required, advised in open court. | | |
| ☐ No notices required. | 3+13 CL | number of notices |
| ☐ Notices mailed by judge's staff. | | |
| ☐ Notified counsel by telephone. | JUL - 7 1997 | date docketed |
| ☒ Docketing to mail notices. | | |
| ☐ Mail AO 450 form. | | docketing dpty. initials |
| ☐ Copy to judge/magistrate judge. | | |
| courtroom deputy's initials | JUL - 7 1997 | date mailed notice |
| | Date/time received in central Clerk's Office | mailing dpty. initials |

Document # 187