**EXHIBIT No. 4**

RIC
DK
KP
CHRON
ROB

No. _____

# In the Supreme Court of the United States

ROBERT R. KRILICH, SR.,

*Petitioner,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

**On Petition for a Writ of Certiorari
to the United States Court of Appeals
for the Seventh Circuit**

**PETITION FOR A WRIT OF CERTIORARI**

THOMAS C. GOLDSTEIN
*Goldstein & Howe, P.C.*
*4607 Asbury Place, N.W.*
*Washington, D.C. 20016*
*(202) 237-7543*

JAVIER H. RUBINSTEIN
*Counsel of Record*
MICHAEL A. SCODRO
*Mayer, Brown, Rowe & Maw*
*190 South LaSalle Street*
*Chicago, Illinois 60603*
*(312) 782-0600*

*Counsel for Petitioner*

i

## QUESTIONS PRESENTED

(1) Whether this Court should resolve the three-way circuit conflict regarding whether a district court is forbidden to consider the circumstances of a defendant, including changed medical conditions, as they exist at the time of a resentencing.

(2) Whether the Seventh Circuit erred in holding—in avowed conflict with the Fifth Circuit—that 18 U.S.C. § 1014 criminalizes the making of false statements, unrelated to lending transactions, to federally insured institutions.

4

2. Based on new findings on remand, the district court concluded that the applicable Guidelines range was 135 to 168 months. By the time of his resentencing in early 2000, however, petitioner's physical and mental health had declined. He accordingly sought a downward departure based on his advanced age (then 69, and now 72) and his deteriorating physical and psychological condition. See Krilich's Response to Presentence Investigation Rep. & Mem. in Aid of Sentence (1/26/00) at 23-29. The district court received medical evidence showing that appellant suffered from a series of serious infirmities. Dist. Ct. 11/1/00 Op. at 7. Invoking U.S.S.G. § 5H1.4, the court granted a five-level departure based specifically on petitioner's "four major ill-nesses"—"cardiovascular disease, peripheral vascular disease with hypertension, obstructive pulmonary disease and back disease/lumbar and lumbosacral origin." *Id.* at 10. With the departure, the court imposed a term of 87 months' imprisonment. *Id.* at 11.

3. Petitioner appealed from another aspect of the sentencing order, and the Government cross-appealed from the five-level downward departure. The Seventh Circuit held that the district court's decision to depart downward on the basis of petitioner's age and infirmity could not "be reconciled with" the Guidelines, including particularly Section 5H1.4, which limits departures to cases of "extraordinary physical impairment." *United States* v. *Krilich*, 257 F.3d 689, 693 (2001). Having rejected the basis for the district court's downward departure, the Court remanded the case with a specific mandate to resentence "in the range of 135 to 168 months." *Id.* at 694.

4. After the Seventh Circuit remanded, but prior to any resentencing proceedings, petitioner's health declined even more dramatically. In August 2001, petitioner suffered a nearly fatal acute atrial fibrillation (uncontrolled, rapid, and irregular heart rhythm). That condition arose because petitioner suffered

_____

Second Circuit. If a circuit conflict develops during the pendency of the petition, petitioner will move for leave to amend to present that question to this Court.

5

a severe bowel obstruction, producing "abdominal pain, nausea, vomiting, and inability to hold down liquids and medication." App., *infra*, 4a-5a. Prison officials did not treat the condition as serious, but inexplicably only gave him Pepto-Bismol. His condition deteriorated rapidly. 2/14/02 Tr. 59, 98-99, 149-151.

Petitioner suffers from numerous medical conditions, requiring an array of medications.[2]  His unchecked and untreated vomiting prevented him from keeping any of his medications down.  His psychotic depression and attendant symptoms as a result became "increasingly severe." 2/14/02 Tr. at 14, 46-47.  Even more critically, the vomiting left petitioner extremely dehydrated, placing great stress on his cardiovascular system and producing an acute atrial fibrillation. *Id.* at 98-100. Finally, FMC personnel took petitioner by ambulance to the intensive care unit at a local hospital.  His cardiac rhythm was unstable but—after unsuccessful attempts by hospital personnel to shock his heart back to a stable beat—was ultimately normalized with medication. *Id.* at 98-99. The damage to petitioner's heart and cardiovascular system was permanent. App., *infra*, 5a. As hours of unrebutted medical testimony established, petitioner "sustained an irreversible and permanent predisposition to heart abnormalities in the future." 2/14/02 Tr. 99-100. He has "a much higher likelihood of a significant cardiac event, which would be a heart attack, an

---

[2] Petitioner now takes more than 20 medications for his various ailments, and at the time of his resentencing took at least 16: (1) Nitroglycerin (for angina); (2) Atenolol (for high blood pressure and angina); (3) Lisinopril (for high blood pressure); (4) Lovastatin (for high cholesterol and triglyceride levels); (5) Doxazosin Mesylate (for high blood pressure and benign prostatic hyperplasia); (6) Bupropion (for depression); (7) Paroxetine (for obsessive compulsive disorder, panic disorder, and social anxiety disorder); (8) Seroquil (antipsychotic agent for emotional or mood disorders); (9) Buspar (for depression); (10) Gabapentin (for seizures associated with epilepsy); (11) Levothyroxine Sodium (for hypothyroidism); (12) Timolol (for glaucoma); (13) Doxycycline (for adult periodontitis); (14) Potassium Chloride (for treating/preventing low blood potassium levels); (15) Albuterol Inhaler (for treating/preventing symptoms of asthma, emphysema, and other breathing conditions); and (16) Aspirin (for prevention of blood clots, heart attacks, and strokes). Mem. in Support of Motion for Downward Departure at 2-4 (and 10/23/01 Chronological Record of Medical Care, attached thereto).

6

arrhythmia, or heart failure." *Id.* at 106. "Witness what happened in August when he nearly died." *Id.* at 123.

Petitioner's heart condition is exacerbated by his worsening mental illness. Petitioner suffers from a major depressive disorder (which is psychotic from time to time), obsessive compulsive disorder, panic attacks, and severe anxiety. 2/14/02 Tr. 3, 10, 11. And, as noted, petitioner's inability to keep his medications down caused his psychotic depression to become "increasingly severe" (*id.* at 14, 46-47), aggravating his already serious heart problems (*id.* at 15).

The upshot is that petitioner has a drastically reduced life expectancy. The combination of petitioner's coronary disease and his severe depression will "substantially shorten" petitioner's life. 2/14/02 Tr. 116-118. The best estimate is that he had (at the time of the resentencing hearing) five (or at most eight) years to live, well below the life expectancy for men his age. *Id.* at 31, 34-36, 116-118.

The medical testimony also demonstrated that petitioner's imprisonment severely aggravates his condition. He "would be more effectively treated" outside of prison, where "[t]here would be better coordination between those physicians who are involved in his psychiatric [care] and those who are involved in his cardiac care or his general medical care. That kind of coordination is not occurring in the prison." 2/14/02 Tr. 43-44. By contrast, his "current environment * * * will lead to disastrous health consequences." *Id.* at 120.

5. Petitioner sought a downward sentencing departure on remand based on two Guidelines: his age and infirmity (§ 5H1.1) and his extraordinary physical impairment (§ 5H1.4). See Mem. in Support of Motion for Downward Departure at 4; 2/13/02 Tr. 31-33. The district court held a hearing on petitioner's motion for downward departure on February 14, 2002, limited to the intervening circumstances occurring "since August [2001]." 2/13/02 Tr. 32.

In reaching its sentencing decision, the district court credited the doctors' testimony that petitioner suffers from a severe cardiac condition and that the interplay between this

7

condition and petitioner's clinical depression would likely shorten his life. See 2/14/02 Tr. 175 ("Yes, depression plus serious heart illnesses will shorten his life span"). The court concluded, however, that petitioner had not shown that he would live any longer outside of prison. App., *infra*, 8a-9a. Petitioner accordingly failed to persuade the court that imprisonment would shorten his life span—something the district court believed was necessary to show an "extraordinary physical impairment" for a § 5H1.4 departure.

Critically, the district court held that its finding that petitioner lacked an "extraordinary physical impairment" under § 5H1.4 necessarily foreclosed relief for his "age and infirmity" under § 5H1.1. The court concluded that a defendant can be "infirm" under § 5H1.1 only if he has the sort of "extraordinary physical impairment" that qualifies for § 5H1.4 relief. See, *e.g.*, 2/14/02 Tr. 172. The district court thus believed that there was a single "showing that must be made to warrant a departure under [either of] these provisions." App., *infra*, 7a. The court concluded that, because appellant had not qualified for § 5H1.4 relief, he was also ineligible for a departure under § 5H1.1. 2/14/02 Tr. 168. The district court accordingly denied appellant's motion for downward departure and imposed a sentence of 135 months' imprisonment. *Id.* at 179-180.

6. On appeal, petitioner argued that the district court applied the wrong legal standard by subsuming the § 5H1.1 standard within § 5H1.4. Petitioner explained that the district court's holding misread the Seventh Circuit's previous decision in the case, ran afoul of well-entrenched canons of construction, and conflicted with decisions by the Fifth Circuit and other courts distinguishing between § 5H1.1 and § 5H1.4. The Seventh Circuit never addressed these arguments, however, holding that the district court lacked authority even to consider a downward departure based on petitioner's deteriorating health: "The last time the case was here, we concluded that the evidence did not warrant any reduction in sentence under U.S.S.G. §5H1.1 or §5H1.4." App., *infra*, 2a. The court's mandate on remand was "'to impose a sentence in the range of 135 to 168 months,'" and the district court therefore "had no authority to impose a sentence lower than the one

8

[petitioner] received." *Ibid.* (emphasis added). In the court of appeals' view, an intervening change in governing law might have justified broader proceedings on remand, *ibid.*, but an intervening change in fact did not.

After the Seventh Circuit denied rehearing and rehearing en banc (App., *infra*, 29a-30a) this Petition followed.

## REASONS FOR GRANTING THE PETITION

Certiorari is warranted to resolve two important conflicts among the courts of appeals. First, the Seventh Circuit in this case applied its rule, not followed by any other circuit, that a resentencing court may consider changed circumstances *only* if the circumstances do not bear on an issue already addressed by the court of appeals. The Fourth, Eighth, and Tenth Circuits take the more restrictive position that a district court on resentencing may consider only the facts as they stood at the time of the original sentencing, while the First, Second, Third, Fifth, Sixth, and D.C. Circuits hold that any changed circumstance may be considered by the resentencing court. Under the latter position, which is the correct view in light of this Court's precedents and the structure of the Sentencing Guidelines, petitioner would have been entitled to argue for, and ultimately to receive, a sentencing departure that accounts for the dramatic deterioration in his physical condition.

Second, the Seventh Circuit held that 18 U.S.C. § 1014, which governs "loan and credit applications," applies to statements made to federally insured banks in connection with transactions unrelated to lending. This position, subsequently adopted by the Sixth and Ninth Circuits, squarely conflicts with the holding of the Fifth Circuit in *United States* v. *Devoll*, 39 F.3d 575, 580 (1994), that under *Williams* v. *United States*, 458 U.S. 279 (1982), Section 1014 "applies only to actions involving lending transactions." Given that petitioner's conviction was based on transactions unrelated to a loan or credit application, the court of appeals' decision to reject *Devoll* was outcome determinative. Because the federal government is disabled by *Devoll* from bringing prosecutions in the Fifth Circuit asserting that Section 1014 was violated by statements unrelated to lending transactions, disparate treatment of